FILED

SEP 0 9 2011

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAY LEE VAUGHN, | No. C 09-01568 EJD (PR) |
| Plaintiff, | ORDER GRANTING MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| DR. KASAWA, | |
| Defendant. | |
| | (Docket No. 32) |

Plaintiff, a prisoner at the Correctional Training Facility in Corcoran, California, has filed a pro se civil rights action under 42 U.S.C. § 1983 alleging claims against Salinas Valley State Prison ("SVSP") medical personnel for acting with deliberate indifference to serious medical needs.[1] The Court found cognizable Plaintiff's claims against Defendant Dr. John Kasawa, and ordered service of the complaint.[2] Defendant filed a motion for summary judgment under Federal Rule of Civil Procedure 56. (Docket No. 32.) Plaintiff filed an opposition, and Defendant filed a reply.

///

---

[1] This case was reassigned to this Court on April 25, 2011. (See Docket No. 37.)

[2] The Court dismissed claims against Defendants Nurse Jeans and Dr. Mack for failure to exhaust administrative remedies. (See Docket No. 17.)

Order Granting Motion for Summary Judgment
P:\PRO-SE\SJ.EJD\CR.09\Vaughn01568_grant-msj.wpd

## DISCUSSION

I. **Statement of Facts**

The following facts are undisputed unless otherwise indicated. Plaintiff claims that on or about June 3, 2007, he suffered a seizure while at SVSP which caused him to fall and become unconscious. (Compl. Ex. A, Inmate /Parolee Appeal, CDC Form 602.) Plaintiff was found lying in between the table and under the bunk in his cell at 6:00 a.m., on June 3, 2007. (Def.'s Mot. Summ. J. at 2.) Plaintiff was able to get up and walk to the medical clinic. (Id. at 3.) Plaintiff complained of pain in his left wrist, right elbow and knee, and a knot in the back of his head. (Id.) According to Plaintiff's medical charts submitted by Dr. Kasawa in support of his motion for summary judgment, medical staff noted "[n]o swelling or discoloration visible to [right] knee or [right] elbow" and "swelling to [left] wrist - discoloration visible." (Id. at 3; L. Stocker Decl., Ex. A at 001 (Docket No. 33).) The emergency room nurse who was present advised Plaintiff to apply an Ace wrap and return to the clinic if symptoms worsened; Plaintiff was instructed to elevate his wrist and how to properly use an Ace wrap. (Id.) Plaintiff was also advised that he would be seen by his Primary Care Provider ("PCP") the next day.

Plaintiff was also seen for a follow-up later the same day on June 3, 2007, at 11:30 a.m., when it was noted that there was "[zero] swelling," Plaintiff exhibited full range of motion, and "[zero] gross deformity exhibited." Plaintiff's tendons were intact, although he was able to "snap a tendon across the left ulnar tuberosity." The Ace wrap was reapplied, and Plaintiff was instructed to not use his left hand and to keep it elevated until he saw his PCP the next day. Plaintiff stated that he was already on Vicodin and Tramadol, which were sufficient to relieve any pain. (Stocker Decl., Ex. A at 002.)

Plaintiff claims that he did not receive treatment until the following day, June 4, 2007, when he was seen by Dr. Kasawa. (Compl. Ex. A, Inmate /Parolee Appeal, CDC Form 602, at "additional sheet.") Plaintiff claims that Dr. Kasawa did not properly treat

him for his injuries, and that when Plaintiff expressed dissatisfaction with the treatment, Dr. Kasawa immediately ended the appointment. (Id.) According to the medical chart, Dr. Kasawa noted that Plaintiff's seizure was not a "grand mal" and that were was no loss of consciousness. (Stocker Decl., Ex. A at 003.) Dr. Kasawa ordered an x-ray of Plaintiff's left wrist and wrote a prescription for Motrin. (Id. at 004.) An x-ray was taken on June 6, 2007, and the examining radiologist concluded that the bone and joint structures of the left wrist were normal and that there was no evidence of trauma. (Id. at 005.) Plaintiff continued to receive daily doses of Tramadol and Hydrocodone (Vicodin) throughout June 2007 to relieve pain, (id. at 006), and was given a chrono for a brace for his left wrist on July 19, 2007, (id. at 007). Plaintiff was transferred to Wasco State Prison on July 30, 2007.

## II. Summary Judgment

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Cattrett, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. See Celotex Corp., 477 U.S. at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact

could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id. at 325. If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment may be granted. See Liberty Lobby, 477 U.S. at 249-50.

The burden then shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial.'" Celotex Corp., 477 U.S. at 324 (citations omitted). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." Id. at 323.

The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a material fat. See T.W. Elec. Serv., Inc. V. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. See id. at 631. It is not the task of the district court to scour the record in search of a genuine issue of triable fact. Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. Id. If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party. See id.; see, e.g., Carmen v. San Francisco Unified School District, 237 F.3d 1026, 1028-29 (9th Cir. 2001).

### A. Deliberate Indifference

Plaintiff alleges that Dr. Kasawa acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment in the treatment he provided following Plaintiff's seizure and fall on June 3, 2007.

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. See Estelle v.

Gamble, 429 U.S. 97, 104 (1976); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc); Jones v. Johnson, 781 F.2d 769, 771 (9th Cir. 1986). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. See McGuckin, 974 F.2d at 1059.

A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." McGuckin, 974 F.2d at 1059 (citing Estelle, 429 U.S. at 104). The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a "serious" need for medical treatment. Id. at 1059-60 (citing Wood v. Housewright, 900 F.2d 1332, 1337-41 (9th Cir. 1990)).

A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. Farmer v. Brennan, 511 U.S. 825, 837 (1994). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference." Id. If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk. Gibson v. County of Washoe, 290 F.3d 1175, 1188 (9th Cir. 2002). In order for deliberate indifference to be established, therefore, there must be a purposeful act or failure to act on the part of the defendant and resulting harm. See McGuckin, 974 F.2d at 1060; Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).

Dr. Kasawa argues that Plaintiff's claim that he disregarded his medical needs is directly contradicted by the medical records. (Mot. at 6.) Defendant also contends that a question of whether a particular form of treatment is indicated is a "classic example of

a matter for medical judgment" and that a "medical decision not to order treatment that is not indicated by diagnostic tests does not represent cruel and unusual punishment." (Id.)

In opposition, Plaintiff claims that Dr. Kasawa failed to provide treatment for his head injury or the injuries to his right knee and elbow. (Oppo. at 3.) Plaintiff claims that Dr. Kasawa saw the damage to his left wrist and ordered an x-ray knowing that it would not show the actual damage of the left tendon, and wrongfully denied Plaintiff's request for an MRI. (Id.) In support of this claim, Plaintiff asserts that he recently received an MRI which shows damage to the left wrist along with an old fracture, and that he will submit a copy of the MRI to the Court as soon as he receives it. (Id.) Plaintiff admits that he received an Ace bandage and a chrono for a brace, but claims he did not actually receive the brace until weeks later. (Id. at 4.) In support of his claims, Plaintiff submits the declaration of inmate Donte Corothers who states that he witnessed Plaintiff's seizure and the response by the medical personnel on June 3, 2007, and the declaration of inmate Desmond Walker who states that he witnessed the exchange between Plaintiff and Dr. Kasawa on June 4, 2007, as well as describing treatment he himself received from Dr. Kasawa in September 2007. (Oppo. Ex. A.) Defendant opposes these declarations as not relevant and lacking foundation. (Docket No. 36.) The Court agrees that Mr. Corother's declaration is irrelevant as to Plaintiff's claims against Dr. Kasawa, as is Mr. Walker's declaration with respect to the treatment he himself received from Dr. Kasawa. However, while Mr. Walker's declaration regarding Plaintiff's visit with Dr. Kasawa on June 4, 2007 may be relevant as an eye-witness account, there is nothing in his testimony to indicate a genuine issue of material fact.

Plaintiff's claim that Dr. Kasawa failed to treat his head injury or injuries to his right knee and elbow fail because there is no evidence in the record to indicate that he required any treatment for these alleged injuries. During his follow-up examination the same day of his fall, there was no swelling or discoloration in those areas. (Stocker Decl., Ex. A at 002.) Nor did Plaintiff make any complaints stemming from an injury to

Order Granting Motion for Summary Judgment
P:\PRO-SE\SJ.EJD\CR.09\Vaughn01568_grant-msj.wpd         6

his head at that time. (Id.) Therefore it cannot be said that Dr. Kasawa was deliberately indifferent to injuries which were no longer matters of concern by the next day when he examined Plaintiff.

With respect to Plaintiff's left wrist, there is nothing in the record to suggest that Dr. Kasawa knew of a substantial risk of serious harm to Plaintiff and yet disregarded that risk by failing to take reasonable steps to abate it. When he saw Plaintiff the day following his seizure, Dr. Kasawa noted Plaintiff's left wrist injury and ordered an x-ray. (Stocker Decl., Ex. A at 003.) It cannot be said that his decision to order an x-ray was medically unsound considering that any swelling and discoloration had abated by the afternoon of the incident. See supra at 2. Plaintiff asserts that Dr. Kasawa knew that he had tendon injury and failed to treat it, but without other evidence indicating Dr. Kasawa's state of mind, Plaintiff's assertion is conclusory. Plaintiff alleges that when he showed Dr. Kasawa the tendon snapping back and forth on the bone, Dr. Kasawa merely stated that the damage would go away on its own. (R. Vaughn Decl. at 2.) Nevertheless, Plaintiff's claim that Dr. Kasawa should have ordered an MRI is nothing more than a difference of opinion regarding treatment, which does not give rise to a § 1983 claim. Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981). Similarly, a showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another is insufficient, as a matter of law, to establish deliberate indifference, see Toguchi, 391 F.3d at 1058, 1059-60; Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Mayfield v. Craven, 433 F.2d 873, 874 (9th Cir. 1970). The x-ray results showed normal bone and joint structures with no evidence of trauma, which appears to not require any further treatment. (Stocker Decl., Ex. A at 005.) Nevertheless, Dr. Kasawa prescribed a brace and medication for pain. Although Plaintiff claims that he did not receive brace for several weeks, he cannot attribute the delay to any action on the part of Dr. Kasawa. Furthermore, Plaintiff alleges that a recent MRI shows damage to his left wrist and an old fracture. (Oppo. at 3.) However, he fails to show that the injuries revealed by an MRI taken over a year after the alleged

incident were the result of Defendant's deliberate indifference. In conclusion, Plaintiff fails to show that Dr. Kasawa violated the Eighth Amendment because he was actually aware of the risk of further injury to his left wrist, even if he should have been aware of the risk. Gibson, 290 F.3d at 1188.

Plaintiff has failed to demonstrate a genuine issue of material fact with regard to his claim of deliberate indifference against Defendant Dr. John Kasawa. Accordingly, Dr. Kasawa is entitled to summary judgment as a matter of law. Celotex Corp., 477 U.S. at 323.

## CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment is GRANTED. (Docket No. 32.) Plaintiff's Eighth Amendment claim against Defendant Dr. John Kasawa is DISMISSED with prejudice.

This order terminates Docket No. 32.

DATED: 9/8/11

EDWARD J. DAVILA
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

RAY LEE VAUGHN,

        Plaintiff,

v.

DR. KASAWA,

        Defendant.

Case Number: CV09-01568 EJD

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on 9/04/11, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Ray Lee Vaughn J-64236
CSATF/Corcoran State Prison
P. O. Box 5242
Corcoran, Ca 93212

Dated: 9/04/11

Richard W. Wieking, Clerk
By: Elizabeth Garcia, Deputy Clerk